**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONALD LINCOLN, | NO. EDCV 04-00942 (Mc) |
| Plaintiff, | |
| v. | MEMORANDUM OF DECISION AND ORDER IN A SOCIAL SECURITY CASE |
| JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration, | |
| Defendant. | |

The plaintiff, DONALD LINCOLN, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner") that the plaintiff is not disabled and not entitled to disability insurance benefits ("DIB"). For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence and is free of legal error. The matter is, therefore, affirmed.

**BACKGROUND**

The plaintiff protectively filed an application for DIB under the Social Security Act (the "Act") on April 12, 2001. [Administrative Record ("AR") 97; AR 98-100.] The Commissioner denied the application initially and on reconsideration. [AR 77-80, 83-86.] At the

plaintiff's request, an administrative hearing was held before Administrative Law Judge Helen Hesse (the "ALJ") on March 26, 2003. [AR 580-605.] The ALJ denied the plaintiff's application [AR 69-74], and the plaintiff appealed.  The Appeals Council remanded the matter back to the ALJ [AR 93-96], and a second hearing was held on February 24, 2004 [AR 551-77].  The ALJ filed a second decision dated April 27, 2004, again finding that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 10-19.] The Appeals Council denied the plaintiff's request for review. [AR 4-6.]  The decision of the ALJ stands as the final decision of the Commissioner.

Thereafter, the plaintiff filed the present action.  The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge.  The parties have entered into a Joint Stipulation setting forth their arguments.

### STANDARDS OF REVIEW

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence" is evidence a "reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. at 402; Gordon v. Secretary of Health and Human Services, 803 F.2d at 1072.

This court must review the record as a whole and consider adverse as well as supporting evidence.  See Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the court must sustain the Commissioner's decision.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

### THE FIVE-STEP SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, the Commissioner determines whether the person is engaged in "substantial gainful activity."  If so, the Commissioner denies disability benefits.  Second, if the person is not so engaged, the Commissioner determines whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, the Commissioner denies benefits.  Third, if the person has a severe impairment, the Commissioner determines whether the impairment meets or equals one of a number of "listed impairments."  If the impairment meets or equals a "listed impairment," the Commissioner conclusively presumes that the person is disabled.  Fourth, if the impairment does not meet or equal the "listed impairments," the Commissioner determines whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, the Commissioner denies benefits.  Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to disability benefits only if he or she is unable to perform other work.  See 20 \\\

C.F.R. § 404.1520 and 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

**FINDINGS OF THE ALJ**

The plaintiff was born September 17, 1956. [AR 98.]  The plaintiff has a high school education and three years of college.  [AR 11, 112.] The plaintiff has past relevant work experience which includes work as a garbage truck driver, cleaner, janitor, truck driver, and route delivery driver. [AR 11; <u>see</u> AR 107].  The plaintiff alleges that he has been unable to work since May 2, 2000, because of injuries to his lungs, back and knees.  [AR 98, 106.] The plaintiff also alleges that he has a mental impairment. [AR 338-51; <u>see also</u> AR 407-15, 429-41, for example.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  The ALJ found that the plaintiff had low back pain, sprain/strain of the right knee with probable meniscal tear, history of pneumonia secondary to coccidioidomycosis, an abnormal myocardial scan with reduction in left ventricular ejection fraction, diabetes mellitus and a depressive disorder, not otherwise specified, which were severe.  However, the ALJ found that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. [AR 18.] The ALJ found that the plaintiff's allegations regarding his limitations were not totally credible.  The ALJ found that the plaintiff retained the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally.  He was able to sit for eight hours a day and stand/walk for six hours out of an eight-hour day except for walking on uneven terrain.  The plaintiff must be allowed brief position

changes every hour.  The plaintiff was unable to climb ladders or scaffolds but could occasionally climb stairs, bend, balance, stoop, kneel, crouch or crawl.  The plaintiff was unable to work at unprotected heights and around dangerous or fast moving machinery. The plaintiff was restricted from concentrated exposure to dust, fumes and gases and temperature extremes and sudden changes in temperature. The plaintiff was restricted to a job which did not require hypervigilance or being in charge of safety operations.  The plaintiff could not perform jobs requiring high production, quota or rapid assembly line work.  However, the plaintiff could work at a moderate pace.  The plaintiff also required the option to use a cane as necessary.  [AR 18.]

The ALJ found that the plaintiff was unable to perform any of his past relevant work.  However, considering his age, his education, his transferable skills and his residual functional capacity to perform a significant range of light work, although not the full range of light work, and using Medical-Vocational Rules 202.21 and 202.22 as a framework for decision-making, there were a significant number of jobs in the national economy which the plaintiff could perform. Accordingly, the ALJ concluded that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 18-19.]

## THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the ALJ failed to comply with the Appeals Council Order of Remand and that the ALJ failed properly to consider the opinion of Dr. James Lineback.

\\\

\\\

1

**DISCUSSION**

2

**The Appeals Council Order of Remand**

3    _____The plaintiff's argument focuses upon that portion of the Appeals

4    Council Order of Remand that states that "'before relying on the

5    vocational expert evidence the Administrative Law Judge will identify

6    and resolve any conflicts between the occupational evidence provided

7    by the vocational expert and information in the Dictionary of

8    Occupational Titles (DOT) and it's companion publication, the Selected

9    Characteristics of Occupations (Social Security Ruling 00-4p).'"

10   [Joint Stipulation at 3-4; AR 96).

11   _____The plaintiff contends that the ALJ failed to comply with this

12   order because the ALJ failed to ask the vocational expert whether

13   there were any conflicts between his testimony and the DOT.  The

14   plaintiff further contends that the ALJ failed to ask the vocational

15   expert for the DOT numbers for the jobs.  Thus, according to the

16   plaintiff, both the plaintiff and the reviewing court are deprived of

17   the opportunity to conduct a proper review to see if there are, in

18   fact, any conflicts.

19        First, whether the ALJ asked the vocational expert the DOT

20   numbers is moot.  The vocational expert provided the DOT numbers, and

21   the ALJ specifically referred to the DOT numbers in her decision. [AR

22   573-74; see AR 19.]

23        Likewise, even if the ALJ did not ask the vocational expert

24   whether there was a conflict between his testimony and the DOT, it

25   was reasonable for the ALJ to infer that such a conflict existed

26   because the DOT classifications of the physical requirements of jobs

27   do not envision, for example, the option for the claimant to use a

28   cane. [See AR 95.] See  Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1982)(The ALJ "is entitled to draw inferences logically flowing from the evidence").  The need for questioning the vocational expert about the existence of a conflict, therefore, was obviated.  Moreover, as noted by the Commissioner, the ALJ propounded a hypothetical to the vocational expert which fully set forth the plaintiff's limitations, and the vocational expert named several jobs within the plaintiff's restrictions.  "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Here, there was persuasive testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  Otherwise, even with the DOT numbers cited by the vocational expert in his testimony and by the ALJ in her decision, the plaintiff fails to identify any conflicts.

The ALJ adequately complied with the Appeals Council's Order of Remand.

**Dr. Lineback's opinion regarding disability**

The opinion of a treating physician is generally entitled to greater weight than the opinion of a non-treating physician.  This is so because the treating physician is employed to cure and has a greater opportunity to know and observe his patient than a physician who only saw the claimant on one occasion.  This is not to say, however, that the opinion of even a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir.

1  1989).  If, for example, the opinion of a treating physician is

2  rejected in favor of that of a non-treating physician, and the opinion

3  of the non-treating physician is based upon independent clinical

4  findings, the opinion of the non-treating physician can constitute

5  substantial evidence.  It is then for the ALJ to resolve the conflict.

6  Andrews v. Shalala, 53 F. 3d 1035, 1041 (9th Cir. 1995).  If, on the

7  other hand, the opinion of the non-treating physician is based upon

8  the same clinical findings considered by the treating physician, the

9  ALJ must cite specific and legitimate reasons for rejecting the

10  treating physician's opinion.  Id.

11      The plaintiff first saw Dr. James Lineback in October, 2000, in

12  connection with the plaintiff's workers' compensation claim. [AR 465.]

13  In April, 2001, Dr. Lineback found the plaintiff to be permanent and

14  stationary with restrictions precluding the plaintiff from working

15  around dusts and other respiratory irritants.  Additionally, Dr.

16  Lineback found that the plaintiff's pulmonary impairment was slight

17  and precluded the plaintiff from very heavy lifting activities. [AR

18  15; AR 466.] The plaintiff saw Dr. Lineback intermittently thereafter.

19  On October 28, 2002, Dr. Lineback, who, according to the plaintiff,

20  was the plaintiff's treating physician,[1] indicated that the plaintiff

21  was temporarily totally disabled. [AR 459.] The plaintiff contends

22  that the ALJ improperly rejected this opinion. [Joint Stipulation at

23  6.]

24      The plaintiff's argument is not persuasive.

25  \\\

26  _____

27      [1]However, as Dr. Lineback later noted, the plaintiff had been

28  under the treatment of Dr. Rattidham for his pulmonary complaints, and
    he continued to be under Dr. Rattidham's care in 2002. [AR 450.]

First, opinions such as that an individual is "disabled" or
"unable to work" are legal opinions on issues reserved to the
Commissioner. 20 C.F.R. 404.1527(e).

Next, as noted by the ALJ, by December, 2002, Dr. Lineback again
found the plaintiff to be permanent and stationary.  He did not
indicate any change in the level of the plaintiff's disability, and he
referred the plaintiff back to Dr. Rattidham who had been treating the
plaintiff. [AR 449-50.]  Even assuming that the ALJ had not properly
rejected this opinion, two months of "temporary total disability" is
hardly probative of a disabling impairment.  See 20 C.F.R. 404.1509;
see also Barnhart v. Walton, 535 U.S. 212, 217-18, 122 S.Ct. 1265,
1269-70, 152 L.Ed. 2d 330.

In any event, the ALJ properly rejected any opinion of Dr.
Lineback that the plaintiff was disabled.  Although the ALJ erred in
assuming that Dr. Lineback's "expressions of disability" were
suggestive of an accommodation to the plaintiff [Lester v. Chater, 81
F.3d 821, 832 (9th Cir. 1996), quoting Ratto v. Secretary, 839 F.Supp
1415, 1426 (D. Or. 1993)("'The Secretary may not assume that doctors
routinely lie in order to help their patients collect disability
benefits'")], in citing the lack of any significant objective signs
and findings to document any deterioration in the plaintiff's medical
status, the ALJ provided sufficiently specific and legitimate reasons
for discounting any such "expressions of disability."  [AR 15.]

At the time the plaintiff was reportedly temporarily totally
disabled, Dr. Lineback's physical examination revealed breath sounds
to be normal bilaterally with no obvious wheezes, rales or rhonchi.
There were no additional laboratory data or medical records for Dr.
Lineback's review. [AR 458-59.] The only reason apparently for Dr.

1  Lineback's finding that the plaintiff was temporarily totally disabled

2  in October, 2002, was because the plaintiff's "diagnosis of diabetes

3  introduce[d] a new level of complexity in this case."  Dr. Lineback,

4  therefore, referred the plaintiff for laboratory work. [AR 459.]

5  Otherwise, there is no evidence that the plaintiff's diabetes resulted

6  in any limitations—only that it might have required further

7  investigation.  "The ALJ need not accept the opinion of any physician,

8  including a treating physician, if that opinion is brief, conclusory,

9  and inadequately supported by clinical findings." Thomas v. Barnhart,

10 278 F.3d 947, 957 (9th Cir. 2002).  This is particularly true when

11 "[t]he record contains no information to support a change" of the

12 opinion previously expressed by Dr. Lineback in April, 2001.  Id.

13 _____There was, therefore, no error in the ALJ's analysis of Dr.

14 Lineback's report of October, 2002.[2]

15 \ \ \

16 \ \ \

17 \ \ \

18 \ \ \

19 \ \ \

20 \ \ \

21 \ \ \

22 \ \ \

23

24     [2]Although not cited by the plaintiff, Dr. Lineback also found the
   plaintiff temporarily disabled again in October, 2003.  However,
25 again, examination of the lungs and chest was normal. [AR 525.] Dr.
   Lineback indicated that the plaintiff's primary complaint was his back
26 pain, but Dr. Lineback performed no examination of the plaintiff's
   back. Therefore, the ALJ's finding that Dr. Lineback's "expressions of
27 disability" were conclusory are equally applicable to this report. [AR
   15.]
28

## CONCLUSION

        After careful consideration of the complaint, joint stipulation of the parties, the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

## ORDER

        IT IS ORDERED that judgment be entered in favor of the Commissioner and against the plaintiff.

Dated: December 21, 2005                    _____/s/_____

                                            JAMES W. McMAHON
                                            United States Magistrate Judge


_____
_____